Parmelee *v.* Coe.

---

## DAN E. PARMELEE *vs.* HENRY ELIOT COE ET AL.

First Judicial District, Hartford, March Term, 1927.
WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js

An elector may vote a split ticket, under § 598 of the General Statutes, by placing a cross-mark "X" at the head of a party column and writing in the space in the blank column designated for any given office, the name of any person, not printed on the ballot, for whom he desires to vote.

If the name of a person is written into the blank column in such a manner that it extends beyond the allotted voting space, the ballot is not thereby rendered void, if it is apparent that it was done accidentally and not for the purpose of marking or identifying the ballot.

Similarly, the misspelling of a name written into the blank column does not invalidate the ballot where the error is slight and of such a nature as to make applicable the doctrine of *idem sonans,* and where it is obviously the result of inadvertence or illiteracy rather than an attempt to distinguish the ballot.

Argued March 1st—decided April 11th, 1927.

PETITION for a certificate of election declaring that the plaintiff had been elected a member of the school committee of the town of Durham, brought to and tried by the *Hon. Allyn L. Brown,* a judge of the Superior Court; judgment rendered and certificate issued for the plaintiff, and appeal by the defendant Ellen M. Mathewson. *No error.*

*Leonard O. Ryan,* for the appellant (defendant Ellen M. Mathewson).

*Ernest L. Averill,* for the appellee (plaintiff).

HINMAN, J. At the annual town election in the town of Durham on the first Monday of October, 1926, among the officers to be elected were two members of the town school committee. Henry Eliot Coe was the Republican candidate whose name was printed on the official ballot and Ellen M. Mathewson the Democratic candidate. Votes were also cast for Dan E. Parmelee, the petitioner, by writing his name in the blank column. The moderator declared that Coe had received 134 votes, Mathewson 77, and Parmelee 52, and declared Coe and Mathewson elected. At the hearing on this petition the ballot-box was ordered opened and the votes recounted. It appeared therefrom that of the total ballots cast the moderator allowed 258 and rejected 77. Of the ballots so allowed no question was made that 134 were for Coe, 69 for Mathewson, and 3 for Parmelee. Of the remaining 52 allowed ballots the trial judge rejected 3 and ruled that 49 should be counted for Parmelee, making his total 52. Of the 77 ballots rejected by the moderator, 13 were held to have been correctly excluded, and 64 properly to be counted for Parmelee, making his total vote 116, as against 69 for Mathewson, and he was,

accordingly, held to have been elected, instead of Mathewson.

Three grounds of objection to disputed ballots so counted for the petitioner are presented by this appeal. The first relates to ballots marked only with a cross-mark "X" in the circle at the head of a party column and the name of Parmelee written in the blank column. As to these, the petitioner contends that, in order to vote for any person whose name is not printed on the ballot, the elector must not place a cross-mark in the circle at the head of either party column, but must write the name in the proper space in the blank column and place a cross-mark in the voting space at the left of the name of each other candidate for whom he desires to vote.

That portion of §598 of the General Statutes which relates to the manner of voting a split ticket reads as follows: "Any elector may vote a split ticket . . . by placing a cross-mark 'X' in the voting space at the left of the name of each candidate for whom he desires to vote, or by placing a cross-mark 'X' in the circle at the head of any party column and a cross-mark 'X' in the voting space at the left of the name of any candidate for whom he desires to vote in any other column. If, except as hereinbefore provided, the elector desires to vote for candidates whose names appear in different party columns on the ballot, he shall place a cross-mark 'X' in the voting space at the left of the name of every candidate for whom he desires to vote, and he may also write in the space in the 'blank column' designated for the office, the name of any person, not printed on the ballot, for whom he desires to vote for such office, and such ballot shall be counted for the candidate whose name is so written. In any case where an elector has made a

cross-mark 'X' in the circle at the head of any party column, and also made a cross-mark 'X' in a voting space at the left of the name of any candidate in any other column on the ballot, such ballot shall be counted for the candidate opposite whose name such cross-mark 'X' shall have been placed, and for all the candidates in the party column at the head of which a cross-mark 'X' has been placed, except any candidate for an office for which the name of a candidate has been marked in another column; or whose name has been written in a blank space on the ballot, . . ."

These provisions sustain the legislative construction significantly accorded them, subsequently in the same section, by the prescribed directions for voting a split ticket, which are required to be printed on the stub of the ballot, as follows:   "You may vote a split ticket, that is, may vote for any candidate whose name appears in one party column and for any candidate whose name appears in any other party column by placing a cross-mark 'X' in the voting space at the left of the name of each candidate for whom you desire to vote, or by placing a cross-mark 'X' in the circle at the head of any party column and a cross-mark 'X' in the voting space at the left of the name of any candidate for whom you desire to vote in any other column; and you may also write, in the space in the 'blank column' designated for the office the name of any person not printed on the ballot for whom you desire to vote for such office."   The ballots in question were voted in accordance with the second of these alternative methods of voting a split ticket and were properly counted for the petitioner. *State* v. *Bossa,* 69 Conn. 335, 341, 37 Atl. 977; *Coughlin* v. *McElroy,* 72 Conn. 99, 105, 43 Atl. 854.

The second objection is to ballots on which the name of Dan E. Parmelee was written in the proper place

Parmelee *v.* Coe.

in the blank column but extended slightly beyond the allotted voting space. As to this, the appellant's claim is that the voter must, at his peril, confine his writing of the name within the limits of this voting space, and that any extension beyond its confines constitutes such a distinguishing mark as to render the ballot void. The trial judge finds that upon most of these ballots the last part of the name has very slightly run over, "evidently through unintentional failure of the voter to accommodate his handwriting to the rather restricted space provided for the name to be written, and not in consequence of any effort or intent to mark his ballot by a distinguishing character." The extension therefore is one which appears to have been made accidentally and does not appear to have been made for the purpose of indicating the voter and so does not render the ballot void, under §595 of the General Statutes or otherwise. *Coughlin* v. *McElroy, supra,* 107; *Phelan* v. *Walsh,* 62 Conn. 262, 292, 25 Atl. 1.

Upon 41 ballots the name of the petitioner, as written in for the office of town school committee, was misspelled in varying ways and degrees of departure from the correct method. However, there was not in the town of Durham any other adult bearing the name Dan E. Parmelee or one at all closely resembling it or with which it might be confused, and the trial judge ruled that 37 of these ballots should be counted for the petitioner. Upon all of the ballots so counted the error in spelling was so slight and of such a nature as to render the name as written within the scope of the doctrine of *idem sonans.* Inspection of the original ballots, which were made part of the finding, suggests no doubt that they were intended to be cast for the petitioner and reveals no ground for suspicion that the variations in spelling were calculated to or by any rea-

sonable possibility could serve as a distinguishing mark, but indicates that they were the result of mere inadvertence or illiteracy. These ballots were properly counted. *State ex rel. Willoughby* v. *Gates,* 43 Conn. 533, 538.

Since we hold that none of the three grounds of objection urged are tenable, the fact that some of the ballots in question evinced more than one of the claimed defects does not affect the situation.

There is no error.

In this opinion the other judges concurred.